STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 05-1120

SHELBY SMITH

VERSUS

MORRIS & DICKSON

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 03-07255
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED AS AMENDED.**

**Linda Lea Smith Blackman**
**Attorney at Law**
**Post Office Box 8490**
**Bossier City, LA 71113**
**(318) 742-4713**
**Counsel for Defendants/Appellants**
**Morris & Dickson**
**Louisiana Retailers Mutual Insurance Company**

**W. Jay Luneau**
**Luneau Law Office**
**1239 Jackson Street**
**Alexandria, LA 71301**
**(318) 767-1161**
**Counsel for Plaintiff/Appellee**
**Shelby Smith**

**EZELL, JUDGE.**

This workers' compensation case presents the issue of awards of penalties and attorney fees based on three separate incidents. Morris & Dickson and its insurer, Louisiana Retailers Mutual Insurance Company, appeal a judgment awarding penalties and attorney fees to Shelby Smith on the issues of choice of physician, failure to reasonably controvert a request for knee replacement surgery, and failure to reasonably controvert payment of a medical bill.

## FACTS

Shelby Smith worked for Morris & Dickson for fifteen years as a driver delivering pharmaceutical supplies when he was injured on September 19, 2002. While he was making a delivery to a pharmacy, Mr. Smith tripped and fell as he was pulling a load of supplies, injuring his right knee.

Morris & Dickson sent Mr. Smith to Dr. Robert Smith, a general practitioner at Rapides Industrial Medicine Clinic. Dr. Smith referred Mr. Smith to Dr. Douglas Gamburg at the Orthopedic and Sports Medicine Specialists Clinic. Dr. Gamburg opined that Mr. Smith needed surgery. Since Dr. Gamburg no longer performed surgery, he referred Mr. Smith to Dr. Jeffrey Garrison, another orthopedic surgeon in the same clinic.

Dr. Garrison recommended arthroscopic surgery which was performed in April 2003. Following the surgery, Mr. Smith's condition failed to improve. He continued to have difficulty with weight-bearing activities due to the condition of his right knee. Dr. Garrison opined that Mr. Smith had "suffered a work-related injury that exacerbated and aggravated a most likely underlying chronic arthritic condition that was asymptomatic." Dr. Garrison further believed the arthritic condition was worsened with the meniscus tear and injury to his knee joint surface, resulting in a

1

severely symptomatic state. It was Dr. Garrison's recommendation that Mr. Smith have knee replacement surgery.

Phil Moory, a special investigative adjustor with Summit who was handling the claim, requested a second opinion regarding Mr. Smith's need for knee replacement surgery on September 19, 2003. Dr. Matthew Vuskovich, an occupational medicine specialist who never examined Mr. Smith, determined that Mr. Smith's present symptoms were caused by preexisting chondromalacia and complications of insulin dependant diabetes mellitus. He further stated that, due to age and chronic diseases including coronary heart disease and diabetes, Mr. Smith had increased odds for serious surgical complications including infection, deep vein thrombosis, and pulmonary embolus. Dr. Vuskovich opined that total replacement of the right knee was not medically necessary.

Morris & Dickson refused to authorize the surgery after several requests for approval. As a result of the refusal, Mr. Smith, through counsel, wrote a letter dated October 7, 2003, requesting his choice of physician, Dr. Terry Texada, be approved. Formal demand was also made by Mr. Smith who filed a claim with the Office of Workers' Compensation on October 6, 2003.

On December 16, 2003, Mr. Smith filed a rule to show cause requesting a hearing on the approval of his evaluation with Dr. Texada. Subsequently, Morris & Dickson filed a motion for expedited hearing in which it sought an order compelling the employee to attend an examination with Dr. Gordon Mead. These two matters were consolidated, and a hearing on the rule was held on January 13, 2004. At the hearing, Morris & Dickson substituted Dr. David D. Waddell for Dr. Mead as the orthopedist it sought to have examine the employee.

2

The workers' compensation judge (WCJ) ruled that Dr. Garrison was the employer's choice of physician and denied the employer's motion seeking to have the employee examined by another doctor of Morris & Dickson's choosing. Additionally, the WCJ ruled that Dr. Garrison was not the employee's choice of physician; therefore, Mr. Smith could be seen by an orthopedist of his own choosing, Dr. Texada. Judgment was signed on February 2, 2004, and Morris & Dickson sought a writ of review with this court. This court denied the writ in an unpublished ruling. *Smith v. Morris & Dickson*, WCW 04-381 (La.App. 3 Cir. 6/24/04). Morris & Dickson then sought a writ of review with the supreme court, which was also denied. *Smith v. Morris & Dickson*, 04-1880 (La. 10/29/04), 885 So.2d 594.

On March 11, 2005, Mr. Smith filed a motion to amend his petition to add a claim that Morris & Dickson had failed to pay a bill submitted by Cenla Heart Specialists for conducting a pre-operative clearance examination prior to his approved knee surgery. He asked for penalties and attorney fees for the refusal to pay this bill.

A hearing on the issue of penalties and attorney fees was held on April 8, 2005. On June 22, 2005, the WCJ held that Morris & Dickson was unreasonable in its denial of Dr. Texada as Mr. Smith's choice of physician and awarded a $2,000 penalty and $3,500 in attorney fees. The court awarded an additional $2,000 penalty and $7,000 in attorney fees, finding that Morris & Dickson failed to promptly provide knee replacement surgery. Finally, the WCJ also ruled that Morris & Dickson failed to promptly pay the Cenla Heart Specialists bill and awarded a $2,000 penalty and $2,500 in attorney fees.

A judgment was signed on July 14, 2005. Morris & Dickson and its insurer appealed the judgment on all three penalty and attorney fees awards. Mr. Smith

3

answered the appeal asking for additional attorney fees for work necessitated by this appeal.

Since all issues in this appeal surround the WCJ's award of penalties and attorney fees, we are mindful that WCJ's determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation case is question of fact subject to the manifest error/clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181.

## CHOICE OF PHYSICIAN

Morris & Dickson claims that it was reasonable in failing to grant Mr. Smith's request to see Dr. Texada. It argues that the law surrounding choice of physician issues was in a state of confusion at the time. It cites 2003 La. Acts No. 886, § 1 which amended La.R.S. 23:1121 by adding Sections B(2) through B(5) and was effective August 15, 2003, less than two months before Mr. Smith filed his claim. Morris & Dickson argue that the effect of this amendment was unknown until this court rendered its decision in *Messina v. Isle of Capri Casino*, 04-1061 (La.App. 3 Cir. 12/22/04), 891 So.2d 780, *writ denied*, 05-535 (La. 4/29/05), 901 So.2d 1071. In *Messina*, this court held that the amendment was substantive in nature since it changed the rules for selecting a physician and, therefore, it should be only applied prospectively.

Sections B(2) through B(5) of La.R.S. 23:1121 as added by the legislature in 2003 provide:

> (2)(a) If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.

> (b) When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee's choice of physician, if the employee has received written notice of his right to select one treating physician in any field or

4

specialty, and then chooses to select the employer's referral as his treating specialist after the initial medical examination as signified by his signature on a choice of physician form. The notice required by this Subparagraph shall be on a choice of physician form promulgated by the director of the office of workers' compensation and shall contain the notice of the employee's rights provided under R.S. 23:1121(B)(1). Such form shall be provided to the employee either in person or by certified mail.

(3) Paragraph (2) of this Subsection shall not apply to other physicians to whom the employee is referred by the physician selected by the employer unless the employer or insurer has obtained the choice of physician form provided for under Subparagraph (2)(b) separately for any such physician after the initial medical examination with that physician.

(4) In instances where the employee is illiterate or has a language barrier, an authorized representative of the employer or insurer shall attest by his signature on the form that he has reasonably read and explained the form to such employee prior to their signatures.

(5) If the employee fails or refuses to sign the form as provided in Subparagraph (2)(b) and Paragraph (3) of this Subsection, the employer or his insurer shall be entitled to seek an expedited hearing to be held within ten days, and upon order of the court, may suspend medical benefits until such time as the employee complies with Subparagraph (2)(b) and Paragraph (3) of this Subsection.

Prior to the amendment of La.R.S. 23:1121, the supreme court in *Smith v. Southern Holding, Inc.*, 02-1071 (La. 1/28/03), 839 So.2d 5, settled a split among the appellate courts concerning an employee's choice of physician when he submits to an employer-referred physician for treatment. The supreme court held that "the employee has the right to choose his treating physician, even though he or she submitted to treatment by the employer's physician." *Id*. at 10.

In reasons for ruling, the WCJ stated that the law was well-settled before the 2003 amendment that procedural laws apply retroactively. Based on the supreme court's holding in *Smith*, the WCJ found that it was clear at the time Morris & Dickson refused to agree to Mr. Smith seeing Dr. Texada, that the law provided that Mr. Smith had yet to choose an orthopedic physician and, therefore, Morris &

5

Dickson were in violation of La.R.S. 23:1121.

The evidence in the record indicates that on September 16, 2003, Mr. Smith hired counsel. Counsel for Mr. Smith sent formal demand to Mr. Moory requesting knee replacement surgery as recommended by Dr. Garrison. The letter also informed Mr. Moory that a second opinion was not possible since Dr. Garrison was Morris & Dickson's choice of physician.

On September 19, 2003, Mr. Moory sent a referral sheet to Dr. Vuskovich asking for his opinion on the matter. Dr. Vuskovich's report was issued on September 22, 2003. On that same day, a choice of physician form was sent to Mr. Smith, which Mr. Smith refused to sign. Subsequently, on October 7, 2003, counsel for Mr. Smith sent a letter informing Morris & Dickson of Mr. Smith's desire to see Dr. Texada.

The general rule is that the law applicable in a workers' compensation case is the law in effect at the time of the worker's injury. *Frith v. Riverwood, Inc.*, 04-1086 (La. 1/19/05), 892 So.2d 7. However, it has been recognized that there are exceptions.

In *Resweber v. Haroil Construction Co.*, 94-2708, 94-3138, (La. 9/5/95), 660 So.2d 7, the Louisiana Supreme Court held that amendments to La.R.S. 23:1208 and 1208.1 (providing for the forfeiture of benefits due to false statements made by an employee for the purpose of obtaining compensation benefits) enacted after the employee's injury were applicable to false statements made by the employee after the amendments became effective. The court distinguished these two provisions from provisions of the workers' compensation statute which establish an employee's entitlement to compensation benefits. In holding that the law in effect at the time the employee made the false statements was applicable, rather than the provisions in

6

effect at the time of the employee's injury, the court stated in a footnote:

> The triggering mechanism which makes these provisions applicable is the making of a false statement or misrepresentation, not the occurrence of an accident or injury. Accordingly, it is the date the false statement or misrepresentation was made that is determinative in deciding which version of these provisions apply. Because we are not dealing with provisions setting forth which injuries are compensable under the workers' compensation scheme or what constitutes an "accident" under the workers' compensation scheme, the general rule that the governing law in a compensation action is that which was in effect at the time of the alleged injury, enunciated in such cases as *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992); *Nelson v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991); and *Smith v. Exxon Chem. Americas*, 619 So.2d 140 (La.App. 1st Cir.1993), is not applicable to the present case.

*Id.* at 10, n. 1.

The supreme court further expounded on the exception to the "law in effect at the time of the accident principle" in *Frith*, 892 So.2d at 15, explaining that the exception, which applies in situations involving a "triggering mechanism" that occurs after the accident, cannot be applied to divest injured employees of their right to indemnity benefits under the law in effect at the time of the work-related accident, absent some affirmative act on the employee's part that results in forfeiture of benefits.

Since the amendment to La.R.S. 23:1121 was effective August 15, 2003, it is clear that it was in effect when Mr. Smith requested to see Dr. Texada on October 7, 2003. Therefore, there was a question of whether the law in effect at the time of the injury or at the time of the request of a choice of physician is applicable.

As is clear from the wording of the statute and from the supreme court's holding in *Smith*, the right to choose a treating physician is an absolute right, or benefit conferred upon the employee by the workers' compensation law. It is a right that was conferred upon Mr. Smith at the time he was injured. Therefore, the law was clear after *Smith* that Mr. Smith had a right to choose a treating physician. We agree

7

with the WCJ's decision that penalties and attorney fees were appropriate pursuant to La.R.S. 23:1201(F) for Morris & Dickson's failure to consent to Mr. Smith's request to see Dr. Texada.

## MEDICAL TREATMENT

Morris & Dickson also claims that it was reasonable in failing to approve the knee replacement surgery. It argues that it was entitled to seek additional medical advice on whether knee replacement surgery was reasonable and necessary.

An employer's failure to authorize a medical procedure for an employee otherwise eligible to receive worker's compensation is deemed to be the failure to furnish compensation benefits, thus triggering the penalty provisions of La.R.S. 23:1201. *Authement*, 840 So.2d 1181. In the event of a refusal to provide medical benefits, as distinguished from the termination of such benefits, the "reasonably controverted" standard of La.R.S. 23:1201(F) applies. *Id*.

The Louisiana Supreme Court discussed the meaning of "reasonably controverting a claim" in *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, as follows:

> In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

Mr. Moory testified that he was notified by Mrs. Smith on August 15, 2003, that Dr. Garrison indicated that knee replacement surgery was necessary. Mrs. Smith stated that she explained to Mr. Moory that her husband was using crutches to get

8

around. Mr. Moory told Mrs. Smith that a second opinion would be necessary. Dr. Garrison's medical records of August 19, 2003, reflect that while Mr. Smith is at a severely symptomatic state, he was denied initial approval from the workers' compensation insurer for knee replacement surgery.

At that time, the Smiths hired counsel who sent a request to Mr. Moory on September 16, 2003, for approval of the knee replacement surgery. Mr. Moory then sent medical records to Dr. Vuskovich for his opinion.

The WCJ was obviously not very impressed with Dr. Vuskovich's opinion. Not only had Dr. Vuskovich never examined Mr. Smith, but much of Dr. Vuskovich's report indicates that he had incorrect information about Mr. Smith's health and condition. Dr. Vuskovich indicated that Mr. Smith was an elderly, overweight, insulin-dependent diabetic. He also stated that he had extensive neurovascular lower extremity diabetic disease including vascular occlusion, neuropathy and degenerative skin changes. The WCJ found that the medical evidence did not support these observations. We agree.

There is absolutely no evidence that Mr. Smith is an insulin-dependent diabetic. Furthermore, while Mr. Smith had a heart catheterization in 1996, Mr. Smith indicated that this was when he was treated for a sleep apnea problem and it was discovered he had a skip in his heartbeat. However, there was no indication that he had a heart problem.

Finally, on October 7, 2003, counsel for Mr. Smith notified Mr. Moory that a claim would be filed since action regarding the requested surgery had not been taken. Mr. Moory stated that surgery was finally approved after the WCJ issued it first ruling following the hearing regarding the choice of physician issue. Mr. Smith finally had knee replacement surgery on April 28, 2004, approximately eight months after it had

9

been requested.

We find no evidence that Mr. Smith's request for knee replacement surgery was reasonably controverted. The only medical evidence relied upon was a report from a doctor who had never examined Mr. Smith and did not even have accurate information regarding his medical condition. Dr. Garrison was very adamant that Mr. Smith was in desperate need of knee-replacement surgery. Yet, surgery was not approved for almost eight months. Mr. Smith had no prior knee problems, and there is no evidence whatsoever that this fifteen-year employee had exacerbated his complaints in any manner. We agree with the WCJ that there is no evidence to controvert Mr. Smith's right to knee replacement surgery and, therefore, penalties and attorney fees were proper.

## PAYMENT OF MEDICAL BILL

Lastly, Morris & Dickson complains about the WCJ's finding that it failed to pay a medical bill to Cenla Heart Specialists for pre-surgical testing services. Morris & Dickson argues that it continued to seek additional information regarding the bill to ascertain the appropriate payment.

Louisiana Revised Statutes 23:1201(E) provides that medical benefits "shall be paid within sixty days after the employer or insurer receives written notice thereof." The employer is subject to the payment of penalties and attorney fees for the failure to timely pay medical benefits unless the claim is reasonably controverted or the nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201(F)(2).

Prior to Mr. Smith's arthroscopic knee surgery, he was scheduled for stress testing at Cenla. The records at Summit indicate that Mr. Smith was approved for stress testing on April 8, 2003. Not realizing the claim was a workers' compensation

claim, Cenla originally sent the bill to medicare for payment. When the error was discovered, medicare was refunded and Morris & Dickson was billed. Morris & Dickson received the first bill on September 20, 2004. The bill was not paid, so a second bill was sent on November 3, 2004.

Mr. Moory testified that he requested medical records to support the bill. From Cenla's records, it appears that medical information was originally mailed to Mr. Moory in early November 2004. By December, Cenla had not heard anything so it called Mr. Moory's office and was told they never received the records. At Mr. Moory's request, the records were faxed to him on December 2, 2004. Another request for records was received on December 13, 2004. On March 7, 2005, Cenla was informed that the information faxed in December was illegible, so Mr. Moory's office requested that the information be mailed.

Morris & Dickson also makes an argument that the billing was incorrect on the bill. Christy Dauzat, office manager for Cenla, testified that there was an incorrect billing code on the original bill mailed to medicare which resulted in an incorrect charge. However, she explained that, by the time the bill was sent to Mr. Moory, the bill had been corrected.

Morris & Dickson tries to rely on the failure to receive the requested medical records as reason for failing to pay the bill. However, the facts establish that Cenla was never notified that more medical records were needed or that they were illegible until Cenla called to check on the situation several months later. Furthermore, the stress testing was approved by Morris & Dickson at the time of testing. Thus, we find no error in the WCJ's decision to award penalties and attorney fees for failure to pay the Cenla bill within sixty days.

11

Morris & Dickson also complains about the amounts of penalties and attorney fees awarded by the WCJ in each instance. However, a thorough reading of the submitted brief reveals no argument whatsoever in support of this specific assignment of error. Thus, pursuant to the Uniform Rules-Courts of Appeal, Rule 2-12.4, we consider it abandoned.

In answer to Morris & Dickson's appeal, Mr. Smith requested additional attorney fees for the work performed on appeal. "A workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal." *Frith*, 892 So.2d at 15. We find an additional award of $2,500 is reasonable under these circumstances.

For the reasons expressed in this opinion, the judgment of the Office of Workers' Compensation is amended awarding Shelby Smith an additional $2,500 in attorney fees for work performed by his attorney on appeal. The judgment is affirmed in all other respects. Costs are assessed to Morris & Dickson.

**AFFIRMED AS AMENDED.**