DANIEL L. DYSART, Judge.
 

 h Roberto Duran appeals a judgment of the Office of Workers’ Compensation wherein his claim for workers’ compensation was denied. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY:
 

 Roberto Duran was employed by Turner Industries Group, LLC (hereinafter “Turner”), as a scaffold builder. He alleged in his disputed claim for compensation that he injured his right side and back while at work on January 15, 2008. On that date he was disassembling scaffolding at the Cytec plant in Waggaman, Louisiana, and claimed that as he handed a board down to a co-worker, he felt a pain in his back, paused briefly, but continued working. Mr. Duran claimed that later he was in extreme pain and sought treatment at Tulane Medical Center on January 16, where he reported pain in his right flank and back. The claim states that he reported the accident to Billy Thompson, his supervisor, on January 17, 2008.
 

 [¿Turner responded to the claim stating that Mr. Duran did not have an accident at work. Mr. Duran waived his right to mediation. The case was tried on August 12-13, 2010.
 

 Mr. Duran’s counsel moved for an expedited hearing on a motion to have Turner authorize initial choice of physician. In the supporting memorandum, Mr. Duran claimed that on January 17, Turner’s safety officer, Marshall O’Neill, took him to a clinic in Baton Rouge to be evaluated. According to Mr. Duran, Dr. Charles Tes-sier diagnosed a possible muscular strain. Mr. Duran claimed that he was unable to work at that point, and sought treatment from Dr. Samuel Greenberg, who provided a course of treatment including weekly therapy. Dr. Greenberg requested Turner to pay for an MRI of Mr. Duran’s lumbar spine, but Turner refused. In December of 2008, Turner authorized Mr. Duran to see Dr. Reyes, an orthopedist.
 

 According to Mr. Duran, Marshall O’Neill, Turner’s safety man, transported him to the doctor’s office, and told the doctor that Mr. Duran’s accident was on January 9, 2008. Dr. Tessier prescribed Ibuprofen 800 mg to Mr. Duran. According to Mr. Duran, O’Neill took the prescription from him and told him to take Aleve instead.
 

 
 *1076
 
 Sherman Brown, the site manager for Turner, testified that Garin James, one of Mr. Duran’s co-workers, wrote January 10, 2008, as the date of the alleged incident on his report, because that is the date given to Marshall O’Neill by Mr. Duran.
 

 | ¡¡Medical records from Tulane Medical Center, where Mr. Duran sought treatment on January 16, 2008, indicated that his complaints of flank and back pain had begun three weeks prior. Mr. Duran disputed this at trial, stating that he did not think the medical staff at Tulane could understand him
 
 [1]
 
 , and that he did not understand their questions. The medical records do not reflect that Mr. Duran’s injuries were work-related.
 

 At trial, Mr. Duran testified that he told both of his co-workers, Garin James and Manuel Concepcion, about his work accident immediately after it happened. He then testified that he told them about the accident on January 17, when they were all called to the safety office. His explanation for why he and Turner employees disagreed about the date of the alleged accident was that no one could understand him.
 

 LAW AND ANALYSIS:
 

 The main question to be answered in this appeal is whether a work-related accident occurred. According to the trier-of-fact, one did not. Because the alleged accident was unwitnessed, the court had to decide whether the evidence presented by Mr. Duran established that it was more probable than not that an accident occurred. It is well-established that an allegedly injured employee’s testimony alone may be sufficient to discharge his burden of proof, but only if two elements are satisfied: 1) no other evidence discredits or casts serious doubt upon the employee’s version of the incident; and 2) the employee’s testimony is | ¿corroborated by the circumstances following the alleged incident.
 
 Bruno v. Harbert International, Inc.,
 
 593 So.2d 357, 361 (La.1992)(citing
 
 West v. Bayou Vista Manor, Inc.,
 
 371 So.2d 1146 (La.1979)).
 

 In its judgment, the trial court stated that it did not find Mr. Duran to be a credible witness. As the trial court noted, it is undisputed that the alleged accident was unwitnessed. Thus, Mr. Duran’s testimony and the circumstances following the alleged accident must be weighed to determine if he has carried his burden of proof. The trial court must accept a witness’s uncontradicted testimony, even if the witness is the plaintiff, absent circumstances casting suspicion on the reliability of the testimony.
 
 Bruno,
 
 593 So.2d at 361 (citing
 
 West v. Bayou Vista Manor, Inc.,
 
 371 So.2d at 1147; and
 
 Holiday v. Borden Chemical,
 
 508 So.2d 1381, 1383 (La.1987)).
 

 The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has carried his burden of proof are factual determinations that may not be disturbed on review absent a showing of manifest error.
 
 Bruno,
 
 593 So.2d at 361 (citing
 
 Gonzales v. Babco Farm, Inc.,
 
 535 So.2d 822, 824 (La. App. 2d Cir.1988)). If a trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse.
 
 Sistler v. Liberty Mutual Ins. Co.,
 
 558 So.2d 1106, 1112 (La.1990).
 

 The crux of the plaintiffs case is that because of a language barrier, i.e., he speaks, reads and writes Spanish, the information that he gave to the various safety personnel and supervisors at Turner, his co-workers on the job, and the various
 
 *1077
 
 | ¡¡doctors who treated him, was lost in interpretation. The evidence does not support this conclusion.
 

 Garin James, a co-worker of Mr. Duran, testified at trial that he had not witnessed the plaintiff injure himself on any date in January. He was requested to write a statement about whether he witnessed an accident on January 10, a date which Mr. Duran contends is not the date of his injury. In his statement, Mr. James denied that the plaintiff grabbed at his back or told him that he was injured on January 10, 2008. The plaintiffs attorney repeatedly asked Mr. James if he had been coached or supplied with the words to write on his statement. Mr. James was steadfast in his answer that the statement was true and correct based on his recollection. Mr. James testified that although Mr. Duran spoke “broken” English, they had numerous conversations while working together. It was Mr. James opinion that the plaintiff understood what was being said.
 

 Another co-worker, Manuel Concepcion, who was deceased at the time of trial, also completed a statement in which he reported that he did not witness Roberto Duran injure himself at work on January 10, 2008.
 

 Billy Thompson, one of the two possible men the plaintiff said he spoke with to report his absence from work on January 16, testified that he had no recollection of ever speaking to the plaintiff on the phone about missing work because of a work-related accident. He also testified that he had conversations in English with Mr. Duran while at work and had no reason to believe Mr. Duran did not understand what was being said. Although Mr. Thompson participated in the | (¡investigation of the plaintiffs alleged accident, he denied that he coached either Garin James or Manuel Concepcion about what to write in their statements.
 

 Danny Eddings, an area health and safety manager for Turner, had worked with the plaintiff at another company before working for Turner. He testified that he had numerous conversations with the plaintiff in English at both jobs. He stated that the plaintiff told him on January 17, 2008, that he had hurt himself but that it was not work-related.
 

 Similarly, Lionel Dubea, a Turner support craft supervisor, testified that he had conversations with Mr. Duran in English. He also participated in the investigation of the alleged accident, and denied coaching Mr. Duran’s two co-workers on what to write in their statements. He testified that sometimes worker witnesses would write a draft statement, and then write a final statement after it was “cleaned up” for grammar, spelling, etc. To his knowledge, the draft statements would be kept in the investigation file. He did not know for a fact whether James and Concepcion had re-written their statements.
 

 Mr. Dubea personally questioned Mr. Duran on January 17 about the accident. He testified that the plaintiff told him the accident occurred on January 10, 2008. Although he felt Mr. Duran could understand his questions based on his responses, he brought in an interpreter to verify what the plaintiff was saying. Mr. Duran told the interpreter in Spanish what happened, the interpreter would repeat in English, and Mr. Dubea would write it down. Mr. Duran was allowed to make both a rough and final draft, both of which were contained in the file.
 

 |7In addition to the various versions of the alleged injury and the different dates on which it allegedly occurred, Mr. Duran himself in depositions and trial testimony gave conflicting stories. In his statement given on January 22, 2008, and signed by him, he stated that he injured himself when passing scaffolding down to his coworker, Garin James. However, he re
 
 *1078
 
 ported to Dr. Greenberg, a physician his attorney recommended, that he was injured when he lifted a heavy board and tried to walk with it.
 

 After reviewing the record evidence, trial testimony and findings of fact made by the trier-of-fact, this Court cannot say that the trial court was manifestly erroneous in dismissing Mr. Duran’s claims. The record is replete with contradictions that cast serious doubt on Mr. Duran’s version of the accident to which he testified at trial. Furthermore, the trial court was in the better position to evaluate the credibility of the witnesses, and did not find Mr. Duran to be credible.
 

 Accordingly, for the reasons set forth herein, we affirm the judgment of the trial court.
 

 AFFIRMED
 

 [1]
 

 . The medical records from Tulane Medical Center reflect that a box was checked indicating no interpreter was needed.