MADELEINE M. LANDRIEU, Judge:
| defendant, Sears Roebuck and Company (“Sears”), appeals the September 16, 2014 judgment of the Office of Workers’ Compensation (“OWC”) in favor of claim-; ant, James Payton. Claimant answered the appeal, asking for an additional award of attorney’s fees for his defense of Sears’ appeal.
On November 27, 2013, claimant filed a Form 1008 Disputed Claim for Compensation in the OWC, alleging that he suffered a back injury on September 15, 2013, while in the course and scope of his employment with Sears as an appliance technician. On the Form 1008, the claimant’s accident and injury were described as follows:' “While lifting a washer/dryer in the laundry room of a home in Algiers, he took it to' the patio to be repaired and returned it to the laundry room, he felt a tweek [sic] in back.”
At trial, claimant testified that in August 2013, he was hired by Sears as .an appliance technician. Before that job, he worked for NASA at the Stennis Space Center in Mississippi for 31 years until being laid off in 2013. He also served in the military "for several years and was honorably discharged before being hired by |2NASA as a machine technician. Claimant never had an accident while serving in the military or while working for NASA. He also never had any other accident in which he hurt his back prior to his employment with Sears.
As part of claimant’s job duties at Sears, he traveled to customers’ residences to repair appliances. After participating in a training program in Pensacola, Florida, claimant returned to New Orleans where his immediate supervisor, Carol Quartara-ro, told him that he would be accompanying a technician named-Arthur Lawson, who would act as a mentor to claimant as he learned the job.
During the second week of September 2013 — claimant was unsure as to the exact date — claimant stated that he was involved in a work-related accident while on a re-pah- call to a customer’s home in the "Algiers section of New Orleans. Claimant and Lawson were at the residence to repair a washer. According to claimant, Lawson decided that they should move the appliance outside for the repair work because the appliance was in an area that was difficult to access.
According to claimant, the two men lifted the appliance and took it outside to the patio. As they were lifting the appliance, claimant said he noticed “a little twitch, a little ping” in his back. They repaired the appliance On the patio and then brought it back inside the house after the repairs were completed.
Claimant testified that he did not mention anything to Lawson about the “ping” he felt in his back when lifting the appliance because he thought whatever happened to his back would “work itself out.” Instead, he continued working, but | ..¡started to notice worsening pain in his lower back. After a few days, he found it more difficult to get out of bed and to drive a vehicle. Claimant said Lawson knew he was having back pain but did not know it started when they lifted the washer. He said Lawson joked with him that *86 he was having back pain because he was getting older. But claimant said he decided not to tell Lawson about hurting his back at work because he felt it was not Lawson’s problem.
A few more days went by and the pain did not' get better. On September 26, 2013, claimant' contacted Quartararo, and told her he needed to seek medical-care because something was wrong with his back. He did not tell Quartararo at that time that he suspected his back problem was related to a work accident, and he did not recall whether she asked him if that were the case. He decided that he should not tell Quartararo that the back problem might be related to the work accident until he got an opinion from a medical professional. According to claimant, neither Quartararo nor anyone else at Sears .ever explained to him anything regarding, how or when .to file a workers’ compensation claim.
Claimant stated that he first received medical treatment at the VA hospital in Biloxi, Mississippi on September 27, 2013, and gave a history at that time of having back pain, which started after he lifted a washer while on a service call for Sears. An MRI was ordered. Claimant. called Quartararo after his September 27, 2013 medical appointment, and told her that he had been put on medication and was waiting for the results of his MRI. According to claimant, Quartararo’s only response was that Sears needed to get the company vehicle back that was in | claimant’s possession, and that she would send two Sears’ employees to claimant’s home to retrieve it. According to claimant, Quar-tararo did not ask him in that phone call if he had hurt his back at work.
- The- Biloxi VA Hospital records from October 2013 show-that claimant reported experiencing lower back pain with right leg radiculopathy two to three weeks after an incident of heavy lifting at work. An MRI confirmed that claimant had herniated discs in his lower back and he was advised to avoid heavy lifting. The record does not include testimony from Dr. Gail Farrar, the physician who treated claimant at the VA, but the claimant testified that Dr. Farrar told him that the herniated discs were related to the work incident when he lifted the washer and that he could riot work. Claimant reported the work accident to Quartararo in a phone call on October 31, 2013. He signed a Sears’ form on November 4, 2013, describing the work-related injury.
Claimant was treated by Dr. Paul Van Deventer, an orthopedic surgeon.[1] In his deposition, Dr. Van Deventer stated that, based on the history provided to him by claimant, his- physical examination of claimant and the objective findings on the MRI, his opinion is that claimant has a herniated-disc at the L4-L5 level, and that the herniation is related to the work accident at Sears. Dr. Van Deventer also stated that sometimes pain from a disc herniation can develop over a period of time rather than immediately after the injury. He recommended conservative treatment, including steroid injections and physical therapy, and noted at the time of his ^deposition on July 29, 2014 that claimant had not yet reached maximum medical improvement.
Claimant also sought chiropractic treatment for his back pain from Dr. Alejandro Cabanas of LA Health Solutions in Slidell. The records from LA Health Solutions show that claimant reported twisting his *87 back while lifting an appliance. A November 18, 2013 report from Dr. Gregory Benton of LA Health Solutions noted that claimant reported- lower back pain with radiation to the right lower extremity that developed after lifting an appliance at work. The report also noted the .disc herT niation at L4-L5, and stated that claimant is currently disabled from working.
Claimant testified that he enjoyed working and was grateful for the opportunity to work at Sears after being laid off from -his job at NASA. He explained that because he wanted to make a good impression at his new job, he waited to get confirmation from a medical professional that his back injury was related to a work accident before he reported the same to his supervisor.
According to claimant, no one from Sears ever advised him as to the rules regarding the filing of workers’ compensation claims. Claimant’s testimony on this issue is not directly contradicted'by any of the Sears’ witnesses. In her déposition, Quartararo described the instructions given to new employees for filing workers’ compensation claims but did not state that she personally advised 'claimant’ of the rules regarding the' filing of workers’ compensation claims. She stated that Kathy Corwyn is the employee who usually delivers those instructions,J^but the.record does not include. Corwyn’s testimony or affidavit. Rebecca Katona, a Sears’ safety specialist, stated in her deposition that she thought she was the person who advised claimant as to workers’ compensation procedures, but she admitted she could not be positive she had done so.
Arthur Lawson, the claimant’s mentor at the time of his alleged work-related accident, also testified at trial. He said he taught claimant how to repair appliances, and that claimant was very- appreciative of his job at Sears. Lawson recalled a repair job in a customer’s residence in September 2013 when an appliance needed to be moved from one place to another in order to be repaired. Later under cross-examination, he said that only some parts of the washer had to be moved, not the entire washer. He said that claimant helped him move parts of the washer outside, but said these parts weighed no more than 30 pounds. But on redirect examination, Lawson then said claimant did not help him lift the parts of the washer to bring them outside to the patio, and that claimant only helped with the repair job once Lawson had moved the parts by himself. Lawson stated that claimant never complained to him about hurting his back on the job, and if he had done so, Lawson would have reported the incident to supervisors.
Jerry Leach, the Sears’ district service manager, stated in his- deposition that he called claimant on November 4, 2013, after claimant reported a work-related injury to Carol Quartararo in a phone call on October 31, 2013. Leach said claimant did not say anything ,to him about lifting an appliance. Leach told claimant that Sears would challenge his workers’ compensation claim.
|7In her -deposition, Quartararo said that claimant never mentioned a work-related accident to her in phone calls she had with him between the time of the alleged accident and when he told her on October 31, 2013, That he had suffered a work-related accident and injury. She said she asked him several times if the back problem for which he initially sought medical attention at the end of September 2013 was work-related, and he-said it was not. Rebecca Katona, a Sears’ safety specialist, said in her- deposition that, when she spoke to claimant on October 31, 2013, after he notified Quartararo about a work-related accident and injury, • claimant told her he *88 did not know how or when he injured his back.
Sears concluded that claimant did not suffer a work-related accident and injury, and denied his request for compensation and medical benefits. Claimant’s Disputed Claim for Compensation (Form 1008) followed.
The parties stipulated to the following facts before trial:
1) Claimant was a full-time employee of Sears.
2) Claimant was earning $16.83 per hour.
3) Claimant’s average weekly wage was $673.20.
4) Claimant’s compensation rate is $448.35 per week.
5) Claimant was working for Sears the week of September 16,2013.
Following trial, the OWC judge rendered judgment, which was signed on September 16, 2014, finding that claimant sustained his burden of proof regarding accident, injury and disability. The judge ordered Sears to pay back benefits from the date of September 27, 2013, to the date of the trial, August 11, 2014, totaling $21,072.45, and ongoing temporary total disability benefits in the amount of $448.35 per week from the date of the trial and forward. The judge further ordered Sears to authorize claimant’s treatment with Dr. Donald Dietze, a neurosurgeon,. to IsPay all past due medical bills and mileage reimbursement requests related to this work accident and to authorize all medically necessary and related medical treatment to claimant going forward. Additionally, the OWC judge ordered Sears to pay $4,000.00 in penalties and $4,000.00 in attorney’s fees for its unreasonable refusal to pay indemnity benefits and denial of medical treatment.
The OWC judge issued written reasons for judgment. The judge found claimant was a credible witness and that his testimony comported with the medical evidence presented at trial. He further found that Sears did not reasonably controvert this claim, thereby triggering the penalty provisions of La. R.S. 23:1201. In reaching that conclusion, the judgment noted that claimant reported a work accident and injury to certain Sears’ employees, there were no records of prior back complaints or injuries regarding claimant and the medical records obtained subsequent to the work accident corroborated claimant’s version of events. After further finding •that the witnesses for Sears were not credible, the judge found that claimant was entitled to penalties and attorney’s fees for Sears’ failure to authorize medical treatment and pay indemnity benefits without a reasonable basis.
On appeal, Sears first argues that the claimant did not carry his burden of proving that an accident or injury occurred on the job. Specifically, Sears contends that claimant’s, version of events was not corroborated and all other evidence in the case discredited claimant’s allegations.
Appellate courts review the factual findings in a'workers’ compensation case under the manifest error or clearly wrong standard. Dean v. Southmark Const., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. The findings of the OWC judge will not be set aside unless the reviewing court finds them to be clearly wrong in | plight of the record viewed in its entirety. Id. “Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Stobart v. State *89 through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
The claimant in this case had the burden of proving “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031 A; Gray v. Marriott Residence Inn, 2011-1068, pp. 6-7 (La.App. 4 Cir. 2/1/12), 85 So.3d 163, 167. “Accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). “It is well-established that an .allegedly injured employee’s testimony alone may be sufficient to discharge his burden of proof, but only if two elements are satisfied: 1) no other evidence discredits or casts serious doubt upon the employee’s version of the incident; and 2) the employee’s testimony is corroborated by the circumstances following the alleged incident.” Duran v. Turner Industries Group, LLC, 2011-0210, pp. 3-4 (La.App. 4 Cir. 7/20/11), 70 So.3d 1074, 1076, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992).
The claimant testified that he suffered a personal injury in a work-related accident. The medical evidence further supports his claim that he injured his back while working at Sears and is currently disabled from working. Before claimant started his job at Sears, he had been employed at the same job for over 30 years, and prior to that job, he had served in the military for several years until he was 11 (¡honorably discharged. He never had any other work-related accident or back injury before the September 2013 injury while working at Sears. Dr. Van Deventer related claimant’s injuries to the work accident described to him by claimant. Dr. Van De-venter’s impression of claimant was that he was trustworthy, and that based on what claimant told him, his claim was consistent with an incident involving lifting that resulted in an injury becoming symptomatic over a one-week period.
As the OWC judge noted in reasons for judgment, three Sears’ employees admitted that claimant reported a work accident and injury. Those employees were Carol Quartararo, claimant’s supervisor; Jerry Leach, the district service manager; and Rebecca Katona, safety specialist. These three employees claimed they learned of claimant’s report of a work-related injury either at the end of October 2013 or the beginning of November 2013.
The explanation offered by Sears for refusing to pay any benefits to claimant is focused on the fact that claimant did not report the accident and injury immediately following the accident. Claimant explained that his delay in reporting the accident and injury was because he wanted to see if the injury resolved quickly and when it did not, he wanted to get the opinion of a medical professional that his injury was related to the work accident before he reported it to his employer. He also wanted to make a good impression in his new job at Sears. Because of these factors and not having been advised by any Sears’ employee as to when and how to file a workers’ compensation claim, claimant decided to wait until he had the opinion of a medical professional confirming that his back injury was related to lifting the washer while on a job for Sears before he reported the injury to his supervisor.
lnAs stated above, the OWC judge found claimant to be a credible witness. Importantly, the judge also found that Sears’ witnesses were not credible. We find the OWC judge’s credibility determinations were reasonable and will not be disturbed *90 on appeal. Claimant’s delay in reporting the accident to Sears is not reason alone to discredit his story, especially given his explanation as to why he did so. Because no credible evidence discredits or casts serious doubt upon claimant’s version .of the incident and his testimony that he suffered a work-related injury is corroborated. by medical evidence, we find the OWC judge did not err in finding that claimant sustained his burden of proof regarding accident, injury and disability.
Sears also argues that the' OWC judge erred in awarding penalties and attorney’s fees to claimant. This case involves a refusal to pay benefits rather than a termination of benefits previously paid. As noted by the OWC judge in reasons for judgment, the “reasonably controverted” standard applies where there has been a refusal to provide medical benefits. Smith v. Morris & Dickson, 2005-1120, p. 8 (La. App. 3 Cir. 3/1/06), 924 So.2d 1217, 1223 (“In the event of a refusal to provide medical benefits, as distinguished from the termination of such benefits, the ‘reasonably controverted’ standard of La. R.S. 23:1201(F) applies.”)
La. R.S. 23:1201 E(l) states that “medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof....” The employer or insurer shall be assessed penalties and attorney’s fees for failure to timely pay medical benefits unless the claim “is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2).
| 12As noted above, three Sears’ employees admitted that claimant reported a work-related injury either at the end of October 2013 or the beginning of November 2013. His first written demand for medical treatment was made on November 18,2013. Claimant filed his disputed claim for compensation on November 27, 2013, and stated on that form that he had been injured at work in September 2013, and had received medical attention for his injuries from the VA Hospital in Biloxi, Mississippi and from LA Health Solutions in Slidell. Claimant had no back injuries before the accident at Sears, and his medical records for treatment received subsequent to the accident corroborated his claim of a work-related accident and injury. It is undisputed that as of the time of trial, Sears had not authorized medical treatment for claimant.
After reviewing the record, we cannot say the OWC judge was manifestly erroneous in finding that Sears did not reasonably controvert claimant’s claim of a work-related accident and injury. Because there is no evidence that nonpayment of benefits was the result of conditions over which Sears had no control, we conclude that the OWC judge did not err in ordering Sears to pay $4,000 in penalties and $4,000 in attorney’s fees for failure to pay benefits.
Claimant also answered the appeal, asking for an additional $1,500 in attorney’s fees for his defense of this appeal. We deny claimant’s request for an additional award of attorney’s fees.
For the reasons stated above, we affirm the September 16, -2014 OWC judgment in favor of claimant and against Sears.
AFFIRMED

. According to claimant, he requested treatment with Dr. Donald Dietze, a neurosurgeon, but Sears denied that request.