KUHN, J.
 

 |aIn this worker’s compensation case, the Office of Workers’ Compensation (“OWC”) awarded the claimant, Joseph Brown, indemnity benefits based on a finding of permanent and total disability, penalties, attorneys’ fees, costs, and legal interest on the indemnity benefits, penalties, and attorneys’ fees. The employer, A M Logging has appealed, urging that the OWC: 1) erred by admitting into evidence and relying on a vocational evaluation report offered by Brown and abused its discretion by awarding Brown the costs associated with this report; 2) erred in finding Brown to be totally and permanently disabled; and 3) erred by imposing penalties and attorneys’ fees and by awarding legal interest on those amounts. Although we find no error in the OWC’s finding that Brown was permanently and totally disabled during the time period in question, we find that his claim was reasonably controverted by A M Logging. Accordingly, we reverse the OWC’s award of penalties and attorneys’ fees and the legal interest awarded on those amounts. Otherwise, we affirm the rulings of the OWC.
 

 I. PROCEDURAL AND FACTUAL BACKGROUND
 

 On October 10, 2005, Brown, who was fifty-seven years old, was working in the course and scope of his employment with A M Logging, when a tree “kicked back” on him and struck his left shoulder, causing injury to his shoulder, neck, back, ribs, and chest. After conservative treatment failed to cure his shoulder pain, he underwent rotator-cuff repair surgery that was performed by Dr. Hontas in December 2007. Afterwards, Brown underwent physical therapy to improve the range of motion in his left shoulder. Despite taking prescribed medications, he continued to have pain and swelling in his shoulder. On May 30, | <¡2008, Dr. Hontas found that Brown’s shoulder injury had reached maximum medical improvement. The results of a May 22, 2008 functional capacity evaluation (“FCE”) by North Oaks Medical Center indicated that Brown was able to work at a light to medium duty level. Dr. Hontas agreed with this categorization but imposed a restriction that the work should not be performed at shoulder level or higher. Brown returned to see Dr. Hontas on July 11, 2008, presenting with swelling in the area between his neck and left shoulder. Dr. Hontas recommended that Brown needed to be careful with increased activity, particularly work at the shoulder level and lifting heavy objects.
 

 On June 26, 2008, Brown began vocational rehabilitation with Younger and Associates, Inc. (‘Younger”). Meredith Riehoux was assigned as Brown’s case manager. Richoux’s initial interview report documents that Brown neither finished high school nor obtained a graduate equivalent degree, he has “limited transferable skills,” and has a felony record.
 
 [1]
 
 On October 8, 2008, Riehoux sent him a letter advising him that certain positions, which had previously been identified as available, had been approved by Dr. Hon-tas and remained available to Brown. These positions included jobs working as a crew member at McDonald’s in Amite or Hammond; a prep person at McDonald’s or a prep cook at Pilot Travel
 
 *490
 
 Center, with positions available in Hammond; and a line server at Piccadilly Cafeteria in Hammond. Brown testified that when he sought employment in person at McDonald’s in Amite, he was informed the company was not hiring. Brown also stated that he called the Piccadilly Cafeteria and the Pilot |/Travel Center in Hammond, and both companies informed him they were not hiring. He admitted informing the prospective employers of his prior surgery and that he had a criminal record. Brown testified that he contacted two or three different logging companies, but found none that was able to give him work that complied with the lifting restriction imposed by Dr. Hontas.
 

 After examining Brown on October 31, 2008, who reported continued pain and weakness in his shoulder, Dr. Hontas opined that he thought Brown was “still capable of working,” but he did not think Brown could “lift anything more than 20 pounds with both hands.” He again advised Brown that he should avoid work at “shoulder level or higher,” and he advised that these restrictions needed to be “strictly followed.” On December 6, 2008, A M Logging terminated Brown’s weekly wage indemnity benefits of $121.00.
 

 On April 21, 2009, Brown returned to see Dr. Hontas, reporting increased pain in his shoulder after mowing his lawn several days earlier. After finding that Brown had strained his left shoulder, Dr. Hontas injected Brown’s shoulder and refilled his prescription medications. During a May 12, 2009 examination, Dr. Hontas noted some muscle atrophy that related to his shoulder injury. In late July 2009, Dr. Hontas responded to an inquiry by Younger regarding the medical necessity for Brown’s continued use of prescription muscle relaxer and pain medications. Dr. Hontas indicated that Brown “has not had a 100% recovery [with respect] to his shoulder. His motion is restricted and he has degenerative changes in his rotator cuff.” He further recommended that Brown should continue with the restrictions that he had imposed and that Brown should use the prescribed medications on an occasional basis.
 

 | Jn July 2009, Brown filed a disputed claim for worker’s compensation, seeking indemnity benefits, penalties, and attorneys’ fees. He later amended it to also seek recovery of legal interest, costs, and other expenses.
 

 On August 3, 2009, A M Logging and its insurer, Louisiana Safety Association of Timbermen-Self Insurance Fund, answered Brown’s claim, admitting that Brown had sustained a disabling injury as a result of the accident, but averring that his injury did not currently cause him to suffer a loss of earning capacity. Defendants urged that Brown was able to return to gainful employment, and they denied any further liability to Brown.
 

 Mr. Bobby S. Roberts, the Director of Vocational Evaluation for the Work Recovery Center, performed a vocational evaluation of Brown on February 17, 2010, shortly before the original OWC hearing in this matter. Roberts concluded that Brown was unemployable based on his physical condition, educational level, criminal background, and lack of transferrable job skills.
 

 Following the hearing on Brown’s claims, the OWC signed a March 29, 2010 judgment, which ordered that: 1) Brown sustained a compensable work-related injury on October 10, 2005, in the course and scope of his employment with A M Logging; 2) Brown’s compensation rate is the statutory minimum amount of $121.00 per week; 3) Brown is permanently and totally disabled as a result of his work-related accident; 4) pursuant to La. R.S. 23:1226(D), there is no reasonable proba
 
 *491
 
 bility that Brown can be rehabilitated through training or education to the extent that he can attain suitable gainful employment and such training or education would not be in his best interest; 5) A M Logging shall pay Brown permanent total disability benefits in the amount of $121.00 per week, | (¡retroactive to December 7, 2008, and continuing; 6) pursuant to La. R.S. 23:1201(1), A M Logging shall pay Brown $5,000.00 in penalties and $5,000.00 in attorneys’ fees for the arbitrary and capricious termination of benefits; and 7) any relief not specifically granted is denied.
 

 On April 8, 2010, Brown filed a joint motion for reconsideration and motion for an increased fee petition, wherein he sought legal interest on the award of indemnity benefits and on the award of interest and penalties, costs that included the expert witness fee of Roberts in the amount of $1,250.00, and increased attorneys’ fees. On April 9, 2010, defendants filed a motion for a new trial, wherein they alleged that the OWC erred in admitting Roberts’ evaluation and that the award of indemnity benefits and the awards of penalties and attorneys’ fees were contrary to the law and evidence.
 

 After a hearing on these various motions, the OWC denied defendants’ motion for a new trial in a May 20, 2010 ruling. The OWC granted Brown’s motions and ordered that defendants pay him $55.00 for filing fees, $1,250 for Robert’s (Work Recovery Center) evaluation, and legal interest on his wage indemnity benefits, penalties, and attorneys’ fees. Otherwise, the OWC denied Brown’s motion for an increase in the award of attorneys’ fees and ordered that the March 29, 2010 judgment “stands in all other respects.” A M Logging has suspensively appealed the OWC judgments.
 
 [2]
 

 |7II. ANALYSIS
 

 A. Vocational Evaluation by Roberts for Work Recovery Center
 

 During the original OWC hearing, when Brown’s counsel introduced Roberts’ vocational evaluation, defendants objected on the grounds of hearsay, relevancy, and the fact that defendants received it less than a month before the March 2010 hearing. Brown’s counsel responded that he had made it available as soon as he received it. The OWC determined the report was submitted by Brown to address the vocational rehabilitation issue, implicitly determining that it was relevant, and that the OWC would “decide what weight to give it” based on defendants’ hearsay objection. Thus, the evaluation was admitted into evidence.
 

 In defendants’ motion for new trial, they reurged the same objections that had been made during trial. Additionally, defendants challenged Roberts’ qualifications, stating “it’s my understanding he’s not even licensed by the State of Louisiana to do vocational rehab.”
 

 In its oral reasons for judgment, the OWC stated, in pertinent part, as follows:
 

 [Roberts’] report literally, I took it as simply what it was which was a second opinion of ... some sort of vocational professional ... for lack of a better word, which merely served as a counter to the vocational rehab that was provided by Mr. Pleune and his company [Younger].
 

 ... [I]t basically just evened the vocational rehab ... dispute....
 
 *492
 
 Roberts’ report ... [was] prepared in anticipation of litigation[.] [I]t didn’t get any more weight than the [vocational] rehab that was already done. In other words, it just ... served to make things even on that playing field.
 

 On appeal, A M Logging alleges that the OWC abused its discretion in admitting Robert’s evaluation into evidence. A M Logging asserts that “[w]hile |sthe document indicates that [Roberts] holds a B.S. and a M.Ed., he is not identified as a licensed professional counselor, as required by [La. R.S. 23:1226], in order to provide rehabilitation services.”
 

 Louisiana Revised Statutes 23:1226 A provides, in pertinent part, “When an employee has suffered an injury ... which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor....” The statute sets forth a statutory benefit to which an injured employee is entitled. This statute neither governs the admissibility of evidence nor determines the qualifications of whom the OWC can accept as an expert. Further, we note that defendants did not question whether Roberts was licensed until the hearing on the motion for new trial, and, even then, defendants did not establish that he was not a licensed professional vocational rehabilitation counselor. Thus, we do not find that this statute operates to bar the introduction of Roberts’ evaluation.
 

 With respect to A M Logging’s hearsay objection, we find La. R.S. 23:1317(A) is pertinent and provides, in part, as follows:
 

 The workers’ compensation judge
 
 shall not be bound by technical rules of evidence or -procedure
 
 other than as herein provided, but all findings of fact must be based upon
 
 competent evidence
 
 and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by
 
 competent evidence,
 
 or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers’ compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be. [Emphasis added.]
 

 |8In other words, the OWC has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies.
 
 Chaisson v. Cajun Bag & Supply Co.,
 
 97-1225 (La.3/4/98), 708 So.2d 375, 381.
 

 The legislative requirement that the OWC’s factual findings be based on competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility.
 
 Id.
 
 When a reviewing court evaluates the factual findings of the OWC under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record.
 
 Id.
 
 “Competent evidence” must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence.
 
 Id.
 
 If the OWC’s factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.
 
 Id.
 

 Giving effect to the more relaxed eviden-tiary standards in La. R.S. 23:1317, the
 
 *493
 
 supreme court has held that the OWC has the discretion to admit hearsay evidence in workers’ compensation proceedings, where such evidence can qualify as “competent evidence.”
 
 Id.
 
 at 382. The inability to cross-examine the declarant affects only the weight that the evidence carries.
 
 Id.
 
 Hearsay evidence can qualify as “competent evidence”, provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. This determination is made on a case-by-case basis under the particular |]nfacts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard.
 

 In the instant case, Roberts’ evaluation is hearsay as it is “a statement, other than one made by the declarant while testifying at the present trial on hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). However, most hearsay evidence admitted in administrative hearings is generally reliable documentary evidence.
 
 Id.
 
 at 382. And here, the reliability of the evaluation in question is comparable to other correspondence and physician’s reports that are regularly admitted in OWC proceedings. A M Logging did not establish any prejudice that resulted from its receipt of Roberts’ evaluation shortly before the original hearing, and its introduction provided for disposition of Brown’s claims as “equitably, summarily, and simply” as it could be done. Thus, we conclude the OWC did not abuse its discretion in admitting Roberts’ evaluation.
 

 B. Permanent and Total Disability Finding
 

 A M Logging asserts that the OWC erred in determining that Brown is totally and permanently disabled as a result of his 2005 work-related accident. A M Logging claims that the trial judge disregarded evidence establishing that Brown was physically capable of engaging in employment, in particular the 2008 FCE, the Younger vocational rehabilitation records, Dr. Hon-tas’ medical records, and the testimony of Russell Pleune, a licensed vocational rehabilitation counselor, who worked for Younger and supervised Richoux.
 

 The finding of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the question |T1of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error.
 
 Tillery v. State, Dept. of Public Safety and Corrections,
 
 07-1228 (La.App. 1st Cir.2/8/08), 984 So.2d 742, 744.
 

 In order to be awarded compensation for permanent total disability, an employee cannot be engaged in any employment or self-employment and must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. La. R.S. 23:1221(2).
 
 Id.
 
 Further, La. R.S. 23:1226(D) requires the OWC to determine whether there is reasonable probability that with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training
 
 *494
 
 or education before adjudicating an employee permanently and totally disabled.
 

 During the hearing, Pleune testified based on his review of the 2008 FCE, Dr. Hontas’ medical notes, and Richoux’s reports. Pleune’s testimony acknowledged that although Brown attended school until the ninth grade, he reads at approximately a second grade level and has a third grade proficiency in math skills. However, Pleune testified that Richoux had brought to Brown’s attention |12available jobs that Dr. Hontas had determined Brown was capable of performing, i.e., the Pilot prep cook position, the McDonald’s crew member and prep person positions, and the Piccadilly line server position, which Dr. Hontas approved if it did not involve repetitive use of his left shoulder. Ultimately, Pleune opined that he would not find Brown to be permanently and totally disabled.
 

 The record further establishes, however, that Brown suffers from hypertension and high cholesterol and has had prior cardiac problems that required him to undergo a previous angioplasty. He was previously injured while working for another logging company, when he stepped in a hole and hurt his lower back. After his back injury, he collected social security income benefits, which were discontinued in 1998, but resumed in 2005. Brown also testified that he did not have access to a vehicle, and Pleune acknowledged that availability of transportation should be taken into account in a FCE. Pleune also acknowledged that the positions that Richoux had found for Brown required “frequent to continuous standing,” and he admitted that he had concerns that Brown could not perform a job that required “truly continuous” standing. Brown, who was 61 years old at the time of the hearing, testified that he was unable to stand for more than thirty to forty-five minutes. Brown’s work history before the accident at issue included pipeline work and working in the logging industry. He testified that after the accident, he was unable to perform his own yard work and that he had tried to work for a wrecker service, but he was unable to do so as a result of his injury. Brown further testified that he could not lift anything with his left hand and that he took his prescribed pain medicine and muscle relaxer twice a day.
 

 |1sIn Roberts’ vocational evaluation, he summarized Brown’s work and medical history and reviewed Dr. Hontas’ medical reports, Richoux’s reports, and the FCE, and after performing his own evaluation of Brown, Roberts determined that: 1) Brown’s left shoulder was problematic as it related to performing any type of work; 2) Brown was functionally illiterate; 3) Brown has no transferable work skills to sedentary or light work; 4) Brown’s treating physician has identified a maximum of 20 pounds with both upper extremities being involved, and this restriction in and of itself, limits Brown to light work or less; 5) the 2008 FCE did not test with industrial based criteria; and 6) based on the results of Roberts’ testing, which employed industrial engineering standards to measure competitive functioning in an employment environment, Brown was unemployable. Roberts concluded as follows, in pertinent part:
 

 I do not anticipate return to work in [Brown’s] case. He is now over 4 years post injury without return to work. He still has significant functional limitations involving the use of the left upper extremity. He was limited in his employment ability in the past due to very low educational functioning. He is further limited presently by his felony conviction. His low back and left lower extremity symptoms affect standing and walking activities. All in all this gentle
 
 *495
 
 man will not be expected to re-enter the gainful labor market.
 

 In oral reasons that addressed the parties’ cross motions filed after the original hearing, the OWC addressed Brown’s disability status, in pertinent part, as follows:
 

 I thought it was painfully obvious listening to [Brown] testify. This man is never going to be able to work in anything other than a manual labor type setting.
 

 I could barely understand him. I kept my notes from his testimony, and ... at the beginning of every third line I [wrote] hard to understand, very hard to understand.
 

 |14... [W]e literally had to set the attorneys on this end so we could actually watch his mouth. And I have to say that really didn’t help me in a lot of ways either.
 
 [3]
 

 In any event, ... [Brown] was on disability prior to taking this job.... [H]e ... wanted to go back and see how much he could do, and my recollection is he was injured not too long after starting work with A M Logging.
 

 Looking back at the emergency room records ..., he sustained a fairly significant injury....
 

 ... He seemed like he made a recovery. But I’m just left with a 60-some-thing-year-old man who can barely communicate, limited education. I don’t see him working anywhere with money ... [with] a cash register....
 

 ... I have to say ... given all his limitations physically and ... his inability to effectively communicate with peo-pie, that pretty much leaves him, in my opinion, just manual labor jobs. You know, what he was doing before, cutting trees.
 

 (Footnote added).
 

 Based on the entirety of the evidence presented, we find it was sufficient to meet Brown’s burden of proving by clear and convincing evidence that he is permanently and totally disabled in accordance with La. R.S. 23:1221(2) and 1226(D). Beyond Brown’s undisputed physical limitations that precluded his return to manual labor in the logging industry, the OWC considered and placed weight on Brown’s poor communication skills, lack of education, the testimony establishing his lack of transfer-rable skills to other fields of work, and his prior limited work history in determining that he was permanently and totally disabled. The record further demonstrates that some of the jobs arguably available to Brown |1sdid not comply with his limited abilities and restrictions in that he was unable to work in a position that either required him to communicate with the public or to stand for long periods of time. Therefore, the OWC was not manifestly wrong in its finding that Brown established by clear and convincing evidence that he was permanently and totally disabled.
 

 C. Penalties and Attorneys’ Fees
 

 With respect to the awards of penalties and attorneys’ fees, we find that neither award is warranted under the facts of this case, because the claimant’s request for workers’ compensation benefits was reasonably controverted by A M Logging.
 
 [4]
 
 
 *496
 
 An employer should not be liable for penalties or attorneys’ fees for taking a close factual or legal question to court for resolution. La. R.S. 23:1201(F)(2),
 
 Lanoue v. All Star Chevrolet,
 
 03-0012 (La.App. 1st Cir.11/7/03), 867 So.2d 755, 761. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed.
 
 Cooper
 
 16v.
 
 St. Tammany Parish School Bd.,
 
 02-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009,
 
 writ denied,
 
 04-0434 (La.4/23/04), 870 So.2d 300.
 

 The record includes contradictory evidence regarding the extent of Brown’s disability. Although the OWC determined Brown could not perform the jobs presented to him by Younger, it did produce a small number of jobs that Dr. Hontas had indicated Brown was capable of performing. Further, Roberts’ evaluation, which supported a finding of permanent and total disability, was not provided to A M Logging until only a few weeks before the original hearing. Based on the evidence presented, we find the OWC was manifestly erroneous in its apparent finding that defendants had not reasonably controverted Brown’s claim for indemnity payments after December 6, 2008. A M Logging’s challenge to Brown’s claim was not frivolous as it was supported by factual and medical information. Accordingly, we reverse that portion of the March 29, 2010 ruling that awarded Brown $5,000.00 in penalties and $5,000.00 in attorneys’ fees, and we reverse that portion of the May 20, 2010 ruling that awarded legal interest on the award of penalties and attorneys’ fees.
 

 D. Costs
 

 A M Logging urges that the OWC abused its discretion in awarding court costs in the amount of $1,250.00, which amount represented the cost billed by Roberts for his vocational rehabilitation evaluation services. Louisiana Revised Statute 23:1317 B provides, in pertinent part, “Costs may be awarded by the workers’ compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable.... ” The question of awarding costs lies 117within the sound discretion of the OWC, as it does with the courts under the general civil provisions.
 
 Boleware v. City of Bogalusa,
 
 01-1014 (La.App. 1st Cir.12/20/02), 837 So.2d 71, 77-78. We find no abuse of discretion in the OWC’s award of costs. The $1,250 amount is supported by the record and is a reasonable charge for the type of services provided.
 

 III. CONCLUSION
 

 For these reasons, we reverse that portion of the March 29, 2010 OWC ruling that awarded Brown $5,000.00 in penalties and $5,000.00 in attorneys’ fees, and we
 
 *497
 
 reverse that portion of the May 20, 2010 OWC ruling that awarded legal interest on the award of penalties and attorneys’ fees. Otherwise the OWC rulings are affirmed. One-half of the appeal costs are assessed to Brown, and the other one-half of the appeal costs are assessed to A M Logging.
 

 MARCH 29, 2010 AND MAY 20, 2010 OWC RULINGS REVERSED IN PART AND AFFIRMED IN PART.
 

 PETTIGREW, J., concurs & assigns reasons.
 

 PETTIGREW, J., concurs and assigns reasons.
 

 _JjI agree with the majority. I note Brown cites
 
 Johnson v. East Baton Rouge Parish School Bd.,
 
 06-1010 (La.App. 1 Cir. 3/28/07), 961 So.2d 388, as support for the proposition that the OWC’s award of penalties and attorney fees should be affirmed. I am of the humble opinion that the facts of
 
 Johnson
 
 are distinguishable from the facts before us now, justifying this court’s decision in the instant case reversing the award of penalties and attorney fees.
 

 [1]
 

 . Brown was convicted of aggravated oral sexual battery on February 25, 2003, and his supervised parole was terminated on October 20, 2008.
 

 [2]
 

 . Brown filed an untimely answer with this court that was dismissed.
 
 Brown v. A M Logging,
 
 10-1440 (La.App. 1st Cir. 12/3/10) (unpublished).
 

 [3]
 

 . During the original hearing, the OWC asked counsel for Brown to stand in a different position so that she could see Brown’s mouth while he was testifying because she was having trouble understanding him.
 

 [4]
 

 . Louisiana Revised Statutes. 23:1201 provides, in pertinent part, as follows:
 

 A. (1) Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages
 
 *496
 
 were payable to the employee before the accident. ...
 

 F. Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.... Penalties shall be assessed in the following manner:
 

 (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault....
 

 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.