THERIOT, J.
|aIn this suit arising from a disputed claim for compensation, the plaintiff appeals the judgment of the Office of Workers’ Compensation, Sixth District. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On October 10, 2005, Joseph Brown was injured in a logging accident during the course and scope of his employment with A M Logging. He filed a disputed claim for compensation on October 19, 2005 against A M Logging and its claims administrator, Alternative Service Concepts, LLC (referred to collectively as appellees). Mr. Brown did not provide any specifics about his injuries. A M Logging submitted a report of the injury to the Office of Workers’ Compensation (OWC) on July 14, 2006, which listed injuries to Mr. Brown’s collar bone, left ribs, and back. Mr. Brown filed a second disputed claim for compensation on July 24, 2009, wherein he listed injuries to his shoulder, ribs, back, chest, and neck.
Following the hearing on Brown’s claims, the OWC signed a March 29, 2010 judgment, which ordered that: 1) Brown sustained a compensable work-related injury on October 10, 2005, in the course and scope of his employment with A M Logging; 2) Brown’s compensation rate is the statutory minimum amount of $121.00 per week; 3) Brown is permanently and totally disabled as a result of his work-related accident; 4) pursuant to La. R.S. 23:1226(D), there is no reasonable probability that Brown can be rehabilitated *428 through training or education to the extent that he can attain suitable gainful employment and such training or education would not be in his best interest[1]; 5) A M Logging shall pay Brown permanent total |«disability benefits in the amount .of $121.00 per week, retroactive to December 7, 2008, and continuing; 6) pursuant to La. R.S. ⅛3:1201(1), A M Logging shall pay Brown $5,000.00.[2]
The appellees filed an appeal of the aforementioned judgment and. posted a suspensive appeal bond. This Court- affirmed in part and reversed in part the OWC’s judgment in Brown v. AM Logging, 2010-1440 (La.App. 1 Cir. 8/4/11), 76 So.3d 486.[3] The .OWC’s judgment became final on October 20, 2011. See La. C.C.P. art. 2166(A).
Once the OWC’s judgment was final, the parties initiated negotiations for payment of past due benefits. An agreement was reached in which a joint motion to release the suspensive appeal bond would be filed in order to release to Mr. Brown the' agreed-upon sum of $14,543.29 in past due payments. The- joint motion stipulated that the payment to Mr. Brown would be in full satisfaction of the judgment as to past due sums. The OWC granted the joint motion on November 28, 2011.
Mr. Brown filed a third disputed claim for compensation on October 24, 2012, that is" at issue in the instant appeal. Mr. Brown claimed that in hisj^ogging .accident he sustained injuries to his shoulder, ribs, chest, back, and neck. He further claimed that the appellees violated La. R.S. 23:1201 by failing to’ authorize medical treatment and pay medical expenses. Mr. Brown claimed the appellees also violated La. R.S. 23:1333 by failing to timely pay wage indemnity after the judgment of March 29, 2010 became final on October 20, 2011. Mr. Brown amended the disputed claim for compensation on November 28, 2012, adding a claim that his employer was in violation of La. R.S. 23:1201 by failing to authorize an examination by an orthopedist of his choosing. Mr. Brown also amended his claim, wherein he alleged he was entitled to penalties and attorney *429 fees because the appellees did not timely pay him indemnity benefits when they became due. Mr. Brown filed a third amendment to his disputed claim for compensation on May 16, 2013, adding a claim that his employer was again in violation of La. R.S. 23:1201 for failing to authorize pain management treatment authorized by his pain management physician.
Trial on the second disputed claim for compensation was held on December 11, 2013. The OWC signed a', judgment in favor of the appellees on July 22, 2014, finding that Mr. Brown failed to carry his burden at trial that his pain issues with his cervical or neck area were related to his work-related accident of October 10, 2005, and that he failed to carry his burden at trial that his employer should have authorized his choice of orthopedist.[4] Mr. Brown was not awarded payment of any medical bills related to his treatment of neck pain, except for the.initial diagnosis. The OWC found that the appellees did not fail to timely pay workers’ compensation benefits to Mr. Brown and did not fail to pay medical benefits due Mr. Brown. It is from this judgment that Mr. Brown appeals.
^ASSIGNMENTS OF ERROR
Mr. Brown' cites four assignments of error:
1. The OWC erred in denying Mr. Brown’s claim under La. R.S. 23:1201(G).
2. The OWC erred in denying Mr. Brown’s claim under La. R.S. 23:1333.
3. The OWC erred in denying Mr. Brown’s claim for medical treatment under La. R.S. 23:1203, related to cervical spine injury.
4.The OWC erred in denying Mr. Brown’s claims under La. R.S. 23:1201(F), related to his thoracic injury and cervical spine injury.
STANDARD OF REVIEW
'Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of. review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. Since all of Mr. -Brown’s assignments of error -relate to the OWC’s findings of fact from the evidence submitted at the trial, the manifest error/clearly wrong standard of review shall be applied to each assignment of error.
DISCUSSION
Assignment of Error # 1
Louisiana Revised Statutes 23:1201(G) states:
If any award payable under the terms of a final, nOnappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results- from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers’ compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall- not exceed three thousand dollars in the aggregate.
*430 | (iMr. Brown made a claim in his second amendment to his disputed claim for compensation that he is entitled to penalties and attorney fees because the appellees did not timely pay him indemnity benefits when they became due. The judgment awarding Mr. Brown these benefits became final on October 20, 2011.
In correspondence between counsel, it was established that indemnity benefits were being paid to Mr. Brown prior to the finalization of judgment. After extensive negotiations, the parties agreed that Mr. Brown was due $14,543.29 in past due benefits. Following the joint motion to release the suspensive appeal bond, which was granted by the OWC on November 28, 2011, the appellees made payments to Mr. Brown, the first being made on December 2, 2011 for the month of November. The parties dispute whether the joint motion amounts to a settlement satisfying all prior payments that were due Mr. Brown.
The joint motion to release the appeal bond states that $14,543.29 would be released from the $50,000.00 suspensive appeal bond for the past due sum of benefits owed to Mr. Brown and that the payment of this sum would be “full satisfaction of said judgments, as to payment of past due indemnity sums and costs.”[5] The OWC signed the order granting the joint motion as written on November 28, 2011. A final judgment has the authority of a thing adjudged only as to those issues presented in the pleadings and conclusively adjudicated by the court. Metoyer v. Roy O. Martin, Inc., 2003-1540 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, 564, writ denied, 2005-1027 (La.6/3/05), 903 So.2d 467 (on rehearing) (citing Ins. Associates, Inc. v. Francis Camel Const., 95-1955 (La.App. 1 Cir. 5/10/96), 673 So.2d 687, 689).
17Since the OWC’s order made the joint motion a thing adjudged and a final judgment on the issue of past due benefits payments, the matter was conclusively adjudicated on November 28, 2011. Mr. Brown’s new disputed claim for compensation filed nearly a year later cannot revisit this claim. We find that Mr. Brown’s claim for penalties and attorney’s fees pursuant to La. R.S. 23:1201(G) is precluded by the doctrine of res judicata. See La. R.S. 13:4231. Mr. Brown’s first assignment of error is without merit.
Assignment of Error # 2
Louisiana Revised Statutes 23:1333 states:
A. If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the award shall immediately become due and exigible and the award shall become executory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.
B. When the award of temporary total disability benefits is accelerated pursuant to this Section, the acceleration shall be limited to an additional six months of benefits.
In its judgment of March 29, 2010, the OWC ordered the appellees to pay Mr. Brown permanent total disability (PTD) benefits at a rate of $121.00 per week. The appellees would have been required to begin making weekly PTD payments to Mr. Brown after the judgment became final on October 20, 2011; however, the first PTD payment was not made until January 12, 2012, representing payment *431 for the first week of January 2012. The appellees admit the delay was due to a clerical error, while Mr. Brown alleges they willfully withheld payment. Regardless of the reason, these payments, cannot be accelerated under La. R.S. 28:1838 unless the appellees have failed to pay six successive PTD installments to Mr. Brown.
|RThe record reflects that after October 20, 2011, Mr. Brown received checks from the Louisiana Safety Association of Tim-bermen[6] in the amounts and on the dates as follows:
November 4, 2011: $325.18
December 2, 2011: $325.18
January 4, 2012: $325.18
January 12, 2012: $121.00
January 12, 2012: $121.00[7]
January 18, 2012: $121.00
January 25, 2012: $121.00
The PTD payments to Mr. Brown continued on a weekly basis, always in the amount of $121.00.
Mr. Brown received his first check fifteen days after the judgment became final on October 20, 2011. Thus, pursuant to the OWC’s judgment, the appellees missed two PTD payments during the period beginning October 20, 2011 when the judgment became final to November 4, 2011, the date of the first payment. Once the appellees began to pay Mr. Brown, the first three payments were in excess of the court-ordered amount. The excess of these payments totals $612.54, or approximately five weekly PTD payments. Pursuant to La.,R.S. 23:1333, the appellees did not fail to pay six successive PTD installments to Mr. Brown.' Mr. Brown’s second assignment of error is without merit.
Assignment of Error # S
Evidence' of Mr. Brown’s medical history prior to the logging accident was introduced at trial. Mr. Brown was involved in a car accident in 1987, and the emergency room records of Lallie Kemp Medical Center where he was treated indicate he complained of a stiff and sore neck and back pain. He was treated at Lallie Kemp again in 1994 for pain radiating into the left 13side of his neck. He was treated again in 1997 and 1999 for back pain and shoulder pain. In' 1998, Mr. Brown injured his back and neck in a separate logging accident. X-rays of Mr. Brown’s neck in 1999 revealed the narrowing of cervical discs. He was again treated for back and neck pain in 2000, 2001, and 2002. In June of 2005, four months before the. logging accident that is the subject of this appeal, Mr. Brown was once again treated at Lallie Kemp for lower back and neck pain.
On- the day of the accident, Mr. Brown was transported to Hood Memorial Hospital by Acadian Ambulance. Acadian’s report from that day does not include any complaints about neck pain. The hospital report shows Mr. Brown complained of pain across his chest, left side, back, and C-collar,[8] but denied pain in his neck. It was discovered that he had multiple rib fractures and a left scapular fracture.
After the accident, Mr. Brown saw several different physicians. In 2007, he began treatment with Dr. Mark Hontas, an orthopedic surgeon, who recommended physical therapy. He began physical therapy that same year. During that time, Dr. Hontas diagnosed a rotator cuff tear in Mr. Brown’s left shoulder, which was ré- *432 paired with surgery. During an evaluation with North Oaks Rehabilitation Services in 2008-, Mr. Brown marked his left shoulder, not his neckj as the source of his pain.
On September 2,- 2011, Alternative Service Concepts received a request from Mr. Brown to authorize an- evaluation by Dr. Lori Summers, a neurosürgéon, to determine the causation of his ongoing cervical pain. Alternative Service Concepts approved the evaluation on September 9, 2011, requesting specifically from Dr. Summers to determine if his cervical pain symptoms were related to his accident on October 10, 2005. ,
|inDr. Summers concluded that Mr. Brown’s cervical symptoms were overlooked when he underwent surgery on his shoulder and that his pain was originating in his neck area and radiating into his left shoulder. She believed that Mr. Brown suffered trauma to his cervical spine on October 10, 2005, which led to nerve root compression that caused pain to radiate into his -left shoulder. Dr. Summers recommended that Mr. Brown have surgery on his cervical spine to alleviate the pain. She affirmed this conclusion in her depositions- of March 5, 2013 and May 7, 2013, which were submitted as evidence at trial.
■ The appellees requested a second medical opinion from Dr. Najeeb Thomas, who is also a neurosurgeon. In his report dated June 5, 2012, Dr. Thomas concluded that based on Mr. Brown’s inconsistent complaints about neck pain and a lawn mower accident in 2009 that required Mr. Brown to - have shoulder' surgery, Mr. Brown’s neck pain was a result of degenerative symptoms that were not directly related to his accident in 2005. Dr. Thomas did not agree with Dr. Summers that surgery was necessary.
The OWC ordered an independent medical examination on Mr; Brown with another neurosurgeon, Dr. Bert Bratton. Dr. Bratton evaluated Mr. Brown on September 18, 2012, and his conclusions were similar to Dr. Thomas’s in that he found it difficult to relate the neck pain to the accident of October 10, 2005, after so much time had elapsed since the accident and since Mr. Brown had complaints of neck pain prior to the accident.
There is a two-part test for appellate review of facts presented in a workers’ compensation trial: (1) whether there is a reasonable factual basis in the record for the finding of the OWC, and (2) whether the record established that the finding is not manifestly erroneous. Louisiana Safety Ass’n of Timbermen v. Carlton, 2012-0775 (La.App. 1 Cm. 12/21/12), 111 So.3d 1076,1083.
The OWC ádopted the appellees’ memorandum in opposition to Mr. Brown’s motion for a new trial as its written reasons for judgment. Those reasons do not adequately address this issue. Where the reasons for judgment are flawed, but the judgment is correct, the judgment controls. Veal v. American Maintenance and Repair, Inc., 2004-1785 (LaApp. 1 Cir. 9/23/05), 923 So.2d 668, 673. We find that a sound factual basis-exists to justify the trial court’s ruling that Mr. Brown’s cervical pain was unrelated to his accident of October 10, 2005.
While Mr. Brown relies on the testimony of Dr. Summers to show his neck pain is a direct result of his accident, there is solid evidence'to the contrary. Mr. Brown had been experiencing neck pain prior to October 10, 2005. After the accident, Mr. Brown would sometimes complain of neck pain on his hospital visits, and sometimes he would not. He had denied having neck pain on one occasion. Two neurosurgeons, Dr. Thomas and Dr. Bratton, reviewed Mr. Brown’s history, and both disagreed with Dr. Summers’s assessment. Nothing in *433 the record suggests that the evaluations of Dr. Thomas and Dr. Bratton are less sound than Dr. Summers’s evaluation or that they were totally incorrect. Therefore, it was not manifestly erroneous for the OWC to rely upon Dr. Thomas and Dr. Bratton’s findings over Dr. Summers’s findings. Mr. Brown’s third assignment of error is without merit. ’
Assignment of Error # ⅛
Louisiana Revised Statutes 23:1201(F) states, in pertinent part:
[F]ailure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required |12by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or' medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.
Dr. Hontas, who performed the surgery on Mr. Brown’s shoulder, was his original orthopedist of choice. On February 22, 2013, Mr. Brown, through counsel, sent a letter to Dr. Hontas, informing him that it was the opinion of Dr. Nicholas Cefalu, who began treating-Mr. Brown in 2009, that his ribs had either developed a calcium buildup or osteochondroma, and that an orthopedist should review the X-rays to diagnose and treat Mr. Brown. In his responding letter, Dr. Hontas explained that he never viewed any Xrays of Mr. Brown’s ribs, but he did review Dr. Cefalu’s and concluded that it was more likely that Mr. Brown had a callous formation where the ribs had been injured and not osteochondroma.
Mr. Brown did not return to Dr. Hontas for follow-up; instead, he amended his disputed claim for compensation to allege the appellees did not authorize any examinations that would determine the nature of the formations on Mr. Brown’s ribs. However, by letter dated January 23, 2012, Alternative Service Concepts informed Mr. Brown that he did not need prior authorization for a follow-up visit to Dr. Hontas, since Dr. Hontas. was already the patient’s orthopedist of choice.
An employee has the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent 113from the employer or workers’ compensation carrier for a change of treating physician within that same field • or specialty. La. R.S. 23:1121(B)(1). Dr. Hontas was Mr. Brown’s initial choice of orthopedist. Alternative Service Concepts was correct that he could have gone back to Dr. Hon-tas without the appellees’ prior authorization at any time for an examination of his ribs.
Mr. Brown alleged the appellees are in violation of La. R.S. 23:1201(F) for not authorizing treatment for both his thoracic and cervical injuries. While his rib injuries would be classified as thoracic, his neck injuries would be cervical. In his third amendment to his disputed claim for *434 compensation, Mr. Brown alleges the ap-pellees did not authorize left medial branch blocks to his cervical spine. As stated above, the OWC found the cervical pain and injuries of which Mr. Brown complains were not causally linked to the work-related accident, and therefore fall outside the scope of La. R.S. 23:1201(F). Mr. Brown’s fourth assignment of error is without merit.
CONCLUSION
The OWC was not manifestly erroneous in concluding that Mr. Brown’s issues with pain in his cervical spine are not causally linked to the accident of October 10, 2005, due to an extensive history of neck issues and intervening injuries both before and after the accident. We find that the joint motion to release the suspensive appeal bond fully satisfied all claims for past due benefits up to November 28, 2011. Also, we find the appellees were not delinquent in paying Mr. Brown weekly PTD benefits. Finally, the appellees were not required to authorize treatment for rib injuries, since Dr. Hontas was Mr. Brown’s orthopedist of choice.
_J_yDECREE
The final judgment of the Office of Workers’ Compensation, Sixth District, signed July 22, 2014, in favor of A M Logging and Alternative Service Concepts, LLC, is affirmed. All costs of this appeal are assessed to the appellant, Joseph Brown.
AFFIRMED.

. Louisiana Revised Statutes 23:1226(D) states:
Prior to the workers’ compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suit- ’ able gainful employment and whether it is in the best- interest of such individual to undertake such training or education.

. Louisiana Revised Statutes 23:1201(1) states:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be. arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions' as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in [R.S. 22:1892(C)] shall be applicable to claims arising under this Chapter.
La. R.S. 22:1892(C) was renumbered from La. R.S. 22:658(0 by 2008 La. Acts No. 415, § 1 (effective Jan. 1, 2009). In the area of workers’ compensation the law in effect at the time of the plaintiff’s injuries is the applicable law. McCoy v. KMB Transp., Inc., 98-1018 (La.App. 1 Cir.5/14/99), 734 So.2d 886, 889, writ denied, 99-2295 (La. 11/24/99), 750 So.2d 986.

.This Court reversed that part of the'judgment awarding Mr. Brown penalties and attorneys’ fees and the legal interest on those amounts. The judgment was affirmed in all other respects. See Brown, 76 So.3d at 496-97.

. The judgment was originally signed on March 20, 2014, but due to a clerical error that did not' alter the substance of the judgment, it was amended on July 22, 2014.

. The pertinent judgments are those of the OWC reviewed and affirmed by this Court in Brown v. AM Logging, 2010-1440 (La.App. 1 Cir. 8/4/11), 76 So.3d 486.

. This is the self-insured fund for A M Logging.

. Mr. Brown received two checks for the same amount on the same date, relating to the second and third weeks of January 2012, respectively.

.It is unclear from the complaint whether "C-collar” means "collar bone.”